UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STANLEY KAPPELL WATSON,

            Appellant,

    v.

SHENEEKA BRADSHER and
ZARINAH ALI,

            Appellees.

CIVIL ACTION NO.

1:21-CV-1778-SEG

## OPINION AND ORDER

Appellant Stanley Kappell Watson appeals the Bankruptcy Court's Order and Judgment (Docs. 1-2, 1-3) entered in part in his favor and in part in favor of Appellees Sheneeka Bradsher and Zarinah Ali. (Doc. 1). For the following reasons, the Court will affirm the judgment in part and reverse it in part, and it will remand the case for further proceedings consistent with this order.

### I.    Background

This appeal arises out of an adversary proceeding brought in the Bankruptcy Court of the Northern District of Georgia by Bradsher and Ali ("Plaintiffs"), who hold a state court judgment against Watson ("Defendant"). After Defendant filed a Chapter 7 bankruptcy petition on November 28, 2018, Plaintiffs commenced an adversary proceeding seeking a determination that

the debt Defendant owes them is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), which exempts from bankruptcy discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Because § 523(a)(6)'s "willful and malicious injury" standard differs from the state-law standards required for findings of slander, false imprisonment, and battery—and the state court verdict was, in any event, unspecific about which claims led to which damages—the Bankruptcy Court held a trial in which it heard testimony from all parties and reviewed a variety of evidence introduced by Plaintiffs. This evidence included the record and transcripts of testimony from the state court trial.

The Court need not restate the Bankruptcy Court's full account of the events that led to Plaintiffs' injuries, which can be found in its final Order in the case.[1] (Doc. 1-2 at 2-9). A relatively brief summary follows here.

---

[1] On appeal, a district court reviews a bankruptcy court's findings of fact under a "clearly erroneous" standard. *See* Fed. R. Bankr. P. 7052 (making Fed. R. Civ. P. 52 applicable to adversary proceedings); Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."); *Kane v. Stewart Tilghman Fox & Bianchi, P.A. (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014). The heavy burden for showing clear error falls on appellants, and it is "an especially heavy burden . . . in a case in which the evidence is largely testimonial," as a significant portion of the evidence is here. *Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir. 1989). "When we examine the facts adduced at trial, generally we will not disturb a

The relevant encounter between the parties occurred at the Tanqueray Lounge in Decatur, Georgia.   At the time, Defendant Watson was a commissioner for DeKalb County, Georgia, and was wearing a shirt that identified him as such.  He had gone to Tanqueray alone after having dinner with a friend.  Plaintiff Bradsher was visiting Plaintiff Ali from out of town, and they went to the Tanqueray Lounge together.  At some point in the evening, Defendant bought a drink or drinks for Bradsher, the two talked, and Defendant propositioned her for sex, a suggestion that Bradsher testified offended her and led her to reject Defendant in insulting terms.[2]

Not long after this, Defendant—needing to pay for the drinks he had purchased for Bradsher and himself—discovered that he did not have his wallet.   After the bartenders told him they had not seen it, Defendant

---

bankruptcy court's credibility determinations." *In re Kane*, 755 F.3d at 1288 (citing *Englander v. Mills (In re Englander)*, 95 F.3d 1028, 1030 (11th Cir. 1996)).  Defendant's arguments on appeal do not challenge any of these findings of fact, and the Court has found no indications of clear error.  "Thus, in summarizing the essential facts developed over the course of a . . . hearing in the bankruptcy court, we accept as we must the bankruptcy court's factual findings in light of its credibility judgments." *Id.*

[2] Defendant denies soliciting Bradsher for sex, but the Bankruptcy Court evidently found Bradsher's testimony to be more credible on this point and accepted her version of these events.  (*See* Doc. 1-2 at 8.)  At the state court trial, two police officers testified that Bradsher and Ali separately told them about the alleged solicitation during the incident.  (*See* Doc. 4-9 at 75, 103-04.)

concluded that Bradsher must have stolen it. In fact he had left the wallet in his car, where he would discover it the next day.

What followed was an incident in which Defendant repeatedly accused Bradsher and then Ali of having stolen his wallet, repeatedly called Plaintiffs "bitches," demanded that the police arrest Plaintiffs, and taunted Plaintiffs that they were going to jail. The Bankruptcy Court found that Defendant "genuinely believed Plaintiffs had taken his wallet." (Doc. 1-2 at 11.) Bradsher, however, knew the accusations to be false, and she grew irate. The situation escalated as she and Defendant had a heated exchange inside the bar. One of the bar's security staff was an off-duty police sergeant, and he took the lead in handling the incident and attempted to control the situation. Early in the episode, Plaintiffs allowed the off-duty officer to look in both of their purses for the wallet. It was not there. Despite this, Defendant continued to accuse both women of having the wallet, to demand that they be arrested, and to taunt Plaintiffs. During this phase of the encounter, Defendant poked Ali's forehead while pointing his finger at her and telling her she was going to jail.[3]

---

[3] Defendant denies poking Ali. The Bankruptcy Court found that he did, but that he most likely meant merely to point at her and did not intend to make physical contact. (Doc. 1-2 at 4, 12.)

The parties were moved outside into the Tanqueray parking lot. The off-duty officer on the scene called two other officers to assist him. Throughout the episode—but particularly at this stage, after things were moved to the parking lot—Defendant attempted to wield his authority as a county commissioner to get those around him to give into his demands. For example, he threatened those at Tanqueray that he would tell "Dale, Annette, and Chief O'Brien"[4] what had happened, that the bar would lose its food license, and that the people working there would lose their jobs. He apparently leveraged his position to ensure that he would not be arrested, despite his "belligerent" behavior and the fact that he briefly drove his car away in the middle of the episode, even after an officer warned him that he should not drive because he was intoxicated.[5] When a police lieutenant arrived on the scene following Defendant's brief drive, the lieutenant called a police major and allowed Defendant to talk to him on the phone. The Bankruptcy Court found that

---

[4] The record suggests that "Chief O'Brien" referred to the then-chief of police of DeKalb County, "Dale" referred to then-Assistant Chief of Police Dale Holmes, and "Annette" referred to another member of the police department. (Doc. 4-3 at 138.)

[5] All three police officers on the scene and the Tanqueray security guard "described Defendant as appearing intoxicated and being belligerent or irate while insisting that Plaintiffs had his wallet and that he wanted them to be arrested." (Doc. 1-2 at 5.)

"[a]lthough the police wanted to arrest Defendant for his disorderly behavior, they were directed by their superiors to allow Defendant to be taken home, apparently in response to phone conversations between Defendant and those superiors." (Doc. 1-2 at 8.)

Bradsher, for her part, was handcuffed not long after the parties were removed from the bar, informed that she was under arrest for disorderly conduct, and placed into the back of a police car. The officer who ordered Bradsher to be arrested testified that he did so not as a result of Defendant's accusations, but as a result of her disorderly conduct. He further testified that he would not have investigated either plaintiff if Defendant had not accused them, and that Bradsher was not disorderly prior to Defendant's accusations. While Bradsher was in the police car, Defendant walked "back and forth along the police car saying that she had stolen his wallet and was going to jail." (*Id.* at 7-8.) Ali remained calm throughout the incident, and although she was not permitted to leave the scene, she was not handcuffed or otherwise physically detained by the police. The officers on the scene ultimately decided not to arrest Bradsher, feeling it was unfair to arrest her for disorderly conduct while allowing Defendant to be driven home, as the police lieutenant had instructed was to be done with Watson.

6

A jury in the State Court of Dekalb County later found Defendant liable to Plaintiffs for $110,000 in damages and $40,500 in fees and costs pursuant to a complaint alleging slander, false imprisonment, and battery. (*Id.* at 2.) The jury allocated $75,000 in compensatory and $5,000 in punitive damages to Bradsher and $25,000 in compensatory and $5,000 in punitive damages to Ali. (*Id.*) The jury verdict did not specify which claim or claims were the basis for the damages. (*Id.* at 9.)

The Bankruptcy Court found nearly this entire amount to be nondischargeable pursuant to the 11 U.S.C. § 523(a)(6) exception for debts for "willful and malicious injury." It found only the amount owing to Ali for the battery count to be dischargeable, and it attributed $2,500 of her jury award to this count. (*Id.* at 13.) This debt was dischargeable, it found, because Defendant did not intend to make physical contact with Ali when he poked her forehead, and therefore the injury could not have been "willful" within the meaning of § 523(a)(6). (*Id.* at 12.) On appeal, Defendant argues that the Bankruptcy Court erred in its finding that Plaintiffs' other injuries were "willful and malicious" within the meaning of § 523(a)(6).

## II.   Standard of Review

United States district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges." 28 U.S.C. §

158(a)(1). "In its appellate capacity, a district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Choi v. Promax Invs., LLC*, 486 B.R. 541, 543 (N.D. Ga. 2012) (quotation omitted).

A district court is required to accept the bankruptcy court's factual conclusions unless they are clearly erroneous. *Id.*; Fed. R. Bankr. P. 7052 (making Fed. R. Civ. P. 52 applicable to adversary proceedings); Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). The bankruptcy court's conclusions of law, by contrast, are reviewed *de novo*. *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1104 (11th Cir. 1994).

With respect to the dischargeability exception at issue in this appeal— 11 U.S.C. § 523(a)(6)—"[w]e review de novo any legal interpretation of the terms 'willful' and 'malicious,' but we review only for clear error the bankruptcy court's finding that a creditor showed a willful and malicious injury by a preponderance of the evidence." *Kane v. Stewart Tilghman Fox & Bianchi, P.A. (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014) (citing *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1264 (11th Cir. 1988), *abrogated on other grounds, Grogan v. Garner*, 498 U.S. 279 (1991)). In other words, while "[a]

bankruptcy court's determination that an injury was 'willful and malicious' is a factual finding that we review only for clear error," *id.*, the reviewing court must inquire anew into the legal meaning of a "willful and malicious injury" to ensure that the correct standard was applied in making the relevant factual determinations.

It is a general rule that exceptions to discharge are to be construed strictly "in order to give effect to the fresh start policy of the Bankruptcy Code." *Holland v. Villa (In re Villa)*, 261 F.3d 1148, 1152 (11th Cir. 2001) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995)). At the same time, Congress enacted the exceptions to discharge to ensure that this "'fresh start' policy is only available to the 'honest but unfortunate debtor.'" *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1326 (11th Cir. 2011) (quoting *United States v. Fretz (In re Fretz)*, 244 F.3d 1323, 1326 (11th Cir. 2001)).

## III.    Discussion

### A. The Issues on Appeal

This appeal requires the Court to interpret the meaning of "willful and malicious injury" as applied to the torts of slander and false imprisonment. The questions, broadly put, are these: Does a slanderer's genuine but false belief in the truth of his slander preclude the possibility that his victim's injuries were "willful"? That they were "malicious"? What about a false

imprisoner's genuine but false belief in the lawfulness of the confinement he causes?

Defendant makes a forceful argument that we should answer these questions in the affirmative. The essence of his argument is that because the Bankruptcy Court found that Defendant "genuinely believed Plaintiffs stole his wallet," it could only have found the injuries he caused to have been "willful and malicious" if it misconstrued the legal standard. Under the correct standard, Defendant argues, his mistaken belief precludes a finding that the injury was "willful" because the slander and false imprisonment torts he committed were, at worst, reckless; he could not have intended the tortious consequences of his actions as the controlling interpretations of § 523(a)(6) require. According to Defendant, the mistaken belief also precludes a finding that the injury was "malicious" because, "so long as Watson was acting under this mistaken but genuine belief, his actions did not become 'excessive' [and thus malicious] merely because he continued to encourage prosecution of Plaintiffs[.]" (Doc. 7 at 21.) Defendant therefore urges this Court to reverse the Bankruptcy Court's conclusions as to the nondischargeability of most of the relevant debt and to direct the Bankruptcy Court to enter a judgment that it is dischargeable in its entirety.

Courts in the Eleventh Circuit evaluating the applicability of the 11 U.S.C. § 523(a)(6) discharge exception generally analyze the "willful" and "malicious" elements separately.  *See Figueroa v. Barreto (In re Barreto)*, 514 B.R. 702, 714 n.13 (Bankr. S.D. Fla. 2013).  The Court will do the same here, but with one preliminary observation.  As noted above, the state court verdict did not specify the claims or claim on which the jury found for Plaintiffs, and thus the Court cannot be certain which exact "injuries" gave rise to Defendant's debt.  This puts a reviewing court in a strange position.  For the Court cannot say for certain whether Defendant committed slander, false imprisonment, or both, although it can be certain that he was found to have committed at least one of these torts.[6]  The exact nature of the "injury" giving rise to the relevant debt is therefore uncertain.  The Court cannot ignore the nature of the underlying claims, for without them it has no way of determining the "injury" to which the "willful and malicious injury" standard must be applied.  For the sake of its analysis, the Court must therefore assume—without deciding—that the state court jury found for Plaintiffs on both the false imprisonment and slander counts.  If, in the end, it appears that one injury was "willful and

---

[6] We do not discuss the issue of battery, for the Bankruptcy Court's finding that $2,500 of the debt derived from this claim and that this amount was dischargeable has not been challenged on appeal.

malicious" and the other was not, it will be up to the Bankruptcy Court to determine what portion of the debt was allocated to each tort—something it has already done with respect to the debt arising from Plaintiff Ali's battery claim.

## B. Willful Injury

"A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *In re Kane*, 755 F.3d at 1293 (quoting *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012)); *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). The Eleventh Circuit has not yet had occasion to decide "whether the term 'substantial certainty' is a subjective standard, requiring a creditor to prove that a debtor actually knew that the act was substantially certain to injure the creditor, or an objective standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury." *In re Kane*, 755 F.3d at 1293; *see also PNC Bank, N.A. v. Nix (In re Nix)*, No. 17-81289-CRJ-7, 2018 WL 3339620, at *6 (Bankr. N.D. Ala. July 6, 2018) ("The Court of Appeals has declined on at least two occasions to parse the distinction, finding each time that even under the more stringent subjective standard that the evidence

in the cases before it supported a finding of nondischargeability.").   Other circuits disagree on this question.  *Compare In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010) (debtor must actually know that injury is "substantially certain" for finding of willfulness), *with In re Scholnik*, 670 F.3d 624, 630 (5th Cir. 2012) (finding willfulness where creditor "showed an objective substantial certainty of harm").

In evaluating the parties' arguments, this Court will have to apply this relatively general standard to two torts that, with respect to § 523(a)(6), have not received much attention in the Eleventh Circuit.  Where necessary, the Court has looked to other circuits' application of the "willful and malicious injury" standard to debts arising from defamation and false imprisonment. Having done so, this Court must agree with the Seventh Circuit that "courts are all over the lot" in defining the phrase.  *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012).

The Bankruptcy Court found that Defendant "genuinely believed" Plaintiffs had stolen his wallet.  Defendant argues that, on the basis of this finding, the degree of fault in the slander and false imprisonment torts he committed was, at worst, recklessness.  He contends, therefore, that the Bankruptcy Court's finding that the injuries were "willful" was an error of law: "nothing more than a recasting of the 'reckless disregard' standard expressly

rejected by Congress," the Eleventh Circuit, and the Supreme Court. *In re Walker*, 48 F.3d 1161, 1165 (1995)).  The Court finds this argument persuasive as to the "willfulness" of the slander injury, but not the false imprisonment injury.

### 1. Slander

An action for slander in Georgia can be sustained on a showing of "fault by the defendant amounting at least to negligence." *Mathis v. Cannon*, 573 S.E.2d 376, 380 (Ga. 2002).  Regardless of their content and their effects, words are not actionable as defamatory if they are true, or if their utterance is privileged in certain prescribed ways.  *See* O.C.G.A. §§ 51-5-5, 51-5-6.  The lower fault requirement applied under state law meant that, here, the state court jury's findings could not have an issue preclusion effect with respect to "willfulness."  (*See* Doc. 1-2 at 10.)  The Bankruptcy Court was of course free to make its own factual finding that the degree of fault in the relevant slander amounted to a "willful . . . injury" under 11 U.S.C. § 523(a)(6).  This Court, however, is inclined to agree with Defendant regarding the application of the legal standard to the slander injury.  If Defendant never had actual knowledge or substantial certainty of the falsity of his accusations, it would, as a matter of law, preclude the finding that his slander amounted to "an intentional act

the purpose of which [was] to cause injury or which [was] substantially certain to cause injury." *In re Kane*, 755 F.3d at 1293.

Under Georgia law, "imputing to another a crime punishable by law" is slander per se: "damage is inferred" from the act, meaning that no actual damages need to be shown. O.C.G.A. § 51-5-4(a), (b); *see Ingram v. Kendrick*, 172 S.E. 815, 816 (Ga. Ct. App. 1934) ("To charge one orally with stealing is a slander or defamation per se, and damage to the slandered person is inferred therefrom."). This creates an analytical wrinkle when it comes to deciding whether the utterance of a slanderous per se statement is "willful"—that is, whether it is "an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *In re Kane*, 755 F.3d at 1293. The difficulty arises because the distinction between act and injury on which this standard is based is not present here: the nature of slanderous per se statements is such that the law presumes injury from the act of speaking itself. *See In re Boland*, 946 F.3d 335, 338 (6th Cir. 2020) (citations omitted).

Given this unique characteristic of defamation per se torts, the courts that have most carefully considered the issue since *Kawaauhau* have concluded that, with respect to defamation per se, the willfulness inquiry should focus on the falsity of the statement. The Sixth Circuit offers the clearest statement of the rationale for this rule:

> As [*Kawaauhau v. Geiger*] emphasizes, a debtor might act intentionally but simply not know that the act will cause injury. That is typically the case with judgments involving negligence. In such cases, the creditor will need to show that the debtor knew injury would result from his actions to except the judgment from discharge.
>
> But the law will sometimes presume that injury results from an act. Such is the case for false statements imputing a lack of chastity, which are defamatory per se. The law presumes that those statements will injure. Thus, all a creditor needs to prove to except a defamation per se judgment from discharge is that the debtor knew the facts which made his statements actionable: that they were false and published without privilege to a third party. The judgment precludes the debtor from arguing that he thought his words weren't harmful. Any debtor who makes a knowingly false, defamatory per se statement is at least substantially certain that his statement will injure.

*Doe v. Boland (In re Boland)*, 946 F.3d 335, 338-39 (6th Cir. 2020) (citing

*Kennedy v. Mustaine (In re Kennedy),* 249 F.3d 576, 582-83 (6th Cir. 2001)); *see*

*also Schrader v. Sangha*, No. 6:13-bk-16964-MH, 2022 WL 987421, at *11-*12

(Bankr. C.D. Cal. Mar. 31, 2022) (reaching same conclusion after collecting

cases and conducting detailed analysis of the willfulness requirement in

context of defamation); *In re Kennedy*, 249 F.3d at 583 (knowledge of falsity

sufficient to find willfulness in cases of defamation per se, because courts

"presume that the speakers make such statements knowing that substantial

harm or injury will result"); *Marshall v. Marshall (In re Marshall)*, 264 B.R.

609, 630 (C.D. Cal. 2001) ("Libel and defamation claims are nondischargeable

under § 523(a)(6) when the statements were made with actual knowledge of

their falsity."); *Pagones v. Mason (In re Mason)*, Nos. 95-B-41537-JLG, 95/1653A, 1999 WL 58579 at *3 (Bankr. S.D.N.Y. 1999) ("The intentional tort of defamation [sic] may constitute 'willful and malicious injury' by the debtor to another entity under § 523(a)(6) of the Bankruptcy Code, as long as the debtor knew the published statements were false.").   This rule is also consistent with the view of the leading bankruptcy treatise.  *See* 4 Collier on Bankruptcy ¶ 523.12(5) (16th ed. 2019) ("A judgment obtained in an action of slander or libel may also be excepted from the operation of a discharge, at least when the cause of action requires knowledge of the falsity of the published statements and not mere reckless disregard for the truth or falsity of the statement.").

The Court holds, therefore, that debts for slander per se are "willful" under 11 U.S.C. § 523(a)(6) if a debtor knew or was "substantially certain" that the defamatory statement was false and published without privilege.[7]  *Cf. In re Kane,* 755 F.3d at 1293 ("A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or

---

[7] As noted above, the Eleventh Circuit has not yet had occasion to decide "whether the term 'substantial certainty' is a subjective standard, requiring a creditor to prove that a debtor actually knew that the act was substantially certain to injure the creditor, or an objective standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury."  *In re Kane*, 755 F.3d at 1293.

which is substantially certain to cause injury.")  In the context of slander per se, the focus of the willfulness inquiry is not on intent to injure because injury is always, as a matter of law, "substantially certain" to result from such statements: that is the essence of defamation per se.[8]  This rule avoids disturbing the common law (and legislative where, as in Georgia, the common law of defamation has been codified) determination that slanderous per se statements have the natural and obvious consequence of injuring their targets. *See, e.g, Gordon Doc. Products v. Serv. Tech*, 708 S.E.2d 48, 57 (Ga. Ct. App. 2011) (words constituting slander per se "are those which are recognized as injurious on their face"); *No Witness, LLC v. Cumulus Media Partners, LLC*, No. 1:06-cv-1733-JEC, 2007 WL 4139399, at *13 (N.D. Ga. Nov. 13, 2007) ("Damage is assumed in situations involving slander per se because the language itself is sufficient to automatically infer negative consequences."); *cf. Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (observing, in applying Florida law, that "[p]er se defamatory statements are

---

[8] The limited bankruptcy court cases in the Eleventh Circuit dealing with § 523(a)(6) dischargeability of defamation per se judgments do not clearly adopt this reasoning, but they do not foreclose it.  *See, e.g., Peteghem v. Kohler (In re Kohler)*, Nos. 12-24328-JRS, 13-02026-JRS, 2017 WL 1030724, at *71-*72 (Bankr. N.D. Ga. Mar. 14, 2017) (finding jury judgment for slander per se had collateral estoppel effect with respect to willfulness where the undisputed testimony at trial showed that Plaintiffs knew their accusation was false *and* that the statement was "made with the intent to injure").

'so obviously defamatory' and 'damaging to reputation' that they 'give[] rise to an absolute presumption both of malice and damage'") (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)).

### 2. False Imprisonment

Regarding the tort of false imprisonment, the most generous reading of Defendant's argument on appeal is that because Defendant genuinely believed Plaintiffs to have stolen his wallet, his actions leading to Plaintiffs' "unlawful detention," O.C.G.A. § 51-7-20, could not have been actions "the purpose of which is to cause injury or which [are] substantially certain to cause injury."[9] *In re Kane*, 755 F.3d at 1293.

The Court notes, as a preliminary matter, that false imprisonment—unlike slander—is an intentional tort. *Williams v. Smith*, 713, 348 S.E.2d 50, 52 (Ga. Ct. App. 1986) ("False imprisonment is an intentional tort, not a tort of negligence."); Restatement (Second) of Torts, § 35 (categorizing "false imprisonment" as an intentional tort and listing intention to confine as one of its elements); *cf. Kawaauhau*, 523 U.S. at 62 ("[T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts."). In Georgia, "[t]he essential elements of the cause

---

[9] Defendant's briefing does not distinguish clearly between possible injuries resulting from false imprisonment and those resulting from slander.

of action for false imprisonment are a detention of the person of another for any length of time, and the unlawfulness of that detention." *Fields v. Kroger Co.*, 414 S.E.2d 703, 704 (Ga. Ct. App. 1992) (citing O.C.G.A. § 51-7-20).  An action for false imprisonment lies when the defendant acts "with the intention of causing a confinement"; therefore, "there can be no such tort as a negligent false imprisonment."  *Stewart v. Williams*, 255 S.E.2d 699, 701 (Ga. 1979).

There is no dispute that Defendant acted with the intention of having Plaintiffs confined; this was a factual finding of the Bankruptcy Court.  (*See* Doc. 1-2 at 11).  Defendant's argument does not seem to contest this finding. Rather, it seems to rest on the idea that while he may have had the requisite intent to commit the state-law intentional tort of false imprisonment, this intent was still insufficient for Defendant's conduct to be "willful" as a matter of federal law.  He would, in other words, ask this Court to hold that a person who commits the tort of false imprisonment only does so willfully—that is, acts with the "purpose . . . to cause injury," *In re Kane*, 755 F.3d at 1293—when he both intends confinement *and* intends the confinement to be unlawful.

The Court is not persuaded that this view of the "willfulness" requirement is consistent with the cases interpreting and applying § 523(a)(6). In the context of debts arising from torts (as opposed to breaches of contract or other non-tortious injuries), the cases have followed *Kawaauhau* and *In re*

*Walker* to construe the term "willful . . . injury" in general conformity with the law of intentional torts, rather than to create a separate, more demanding category. *Kawaauhau* identifies the "willful . . . injury" standard with "the category [of] 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau*, 523 U.S. at 61. In this context, acting with "intent to cause injury" means "intend[ing] 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, comment a). The Eleventh Circuit has described the standard in essentially the same way. *See In re Walker*, 48 F.3d at 1165 ("[U]nder the common law, the word 'intent' . . . denote[s] that the actor desires to cause the consequences of his act, *or* that he believes that the consequences are substantially certain to result from it.") (quoting *Conte v. Gautam (In re Conte)*, 33 F.3d 303, 308 (3rd Cir. 1994); Restatement (Second) of Torts, § 8A) (emphasis in original). The Eleventh Circuit's leading decisions interpreting § 523(a)(6) contrast its definition of willfulness, which we have quoted above, with "reckless disregard of the rights of another" and "recklessly or negligently inflicted injuries," suggesting that the crucial distinction is that between intentional torts and torts of negligence. *See In re Walker,* 48 F.3d at 1163; *Maxfield v. Jennings (In re Jennings),* 670 F.3d 1329, 1334 (11th Cir. 2012). We cannot find support in the cases for the idea that, to be found "willful," an injury must be analogous

21

to a "specific intent" crime, in that there must be intent with respect to every element that makes the injury actionable.  Nor does this seem to be the way that other courts have treated the application of the § 523(a)(6) willfulness standard to judgments for false imprisonment.  All have simply treated the fact that it is an intentional tort as basically conclusive of the issue.  *See Erickson v. Halverson (In re Halverson)*, 226 B.R. 22, 29 (Bankr. D. Minn. 1998) ("Since David committed three intentional torts [including false imprisonment], his conduct was willful."); *Jendusa-Nicolai v. Larsen*, 422 B.R. 913, 921 (Bankr. E.D. Wis. 2010), *aff'd.,* 442 B.R. 905 (E.D. Wis. 2010), *aff'd*, 677 F.3d 320 (7th Cir. 2012).

To put things plainly, the Court's analysis is the following.  False imprisonment is an intentional tort.  For an injury arising out of this tort to be "willful" within the meaning of 28 U.S.C. § 523(a)(6)—to show that he acted intentionally and with "the purpose . . . to cause injury"—it is enough that the debtor acted with the purpose to confine his victim.  The debtor need not act with the specific purpose to *unlawfully* confine his victim, although of course such confinement must in fact be found unlawful if the creditor is to have a valid action for false imprisonment.

This approach is consistent with the plain language of the Georgia Supreme Court's statements about false imprisonment, namely that "[t]o

constitute a false imprisonment, the act of the defendant in confining the plaintiff must be done with the intention of causing a confinement." *Stewart v. Williams*, 255 S.E.2d 699, 701 (1979). This suggests that intent is relevant only with respect to the confinement, not its "unlawfulness." This view is also consistent with two circuit courts' appraisal of the tort, including one from a case that is binding on this Court as pre-1981 Fifth Circuit precedent.[10] *See Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1479 (9th Cir. 1992) (concluding, with respect to a statement of the Oregon law of false imprisonment virtually identical to Georgia's, that "the intent element relates only to the fact of confinement, not the element of unlawfulness"); *Bryan v. Jones*, 530 F.2d 1210, 1213 (5th Cir. 1976) ("[W]e surveyed the law of false imprisonment and concluded that intent to imprison without legal authority need not be proved as an element of the prima facie case. . . . [A] prima facie case [for false imprisonment] is made out against a jailer even when he believes he has legal authority to detain a prisoner. Accordingly, whatever impact his good faith has, it must be as an element of a defense.") (citing *Whirl v. Kern*,

---

[10] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit handed down before October 1, 1981, unless Eleventh Circuit *en banc* or Supreme Court decisions subsequently have considered the issue. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

407 F.2d 781 (5th Cir. 1968)); 1 Harper, James & Gray on Torts, § 3.7 (3d ed. 2006) ("[T]he defendant may be liable although he acted under a reasonable but mistaken belief that he was privileged to imprison or arrest the plaintiff."); Restatement (Second) of Torts § 44 (1965) ("to make the actor liable . . . it is only necessary that he intend to confine the other. . . . The actor's motives in so confining the other are immaterial.").

To be sure, the foregoing discussion does not suggest that Defendant's genuine belief in the truth of his allegations is irrelevant to the analysis of false imprisonment injuries under § 523(a)(6).  It only means that these beliefs go to the question of whether the injury was "malicious," since obviously a genuine belief that the consequences one intended were lawful is relevant to whether an injury was "wrongful and without just cause or excessive."[11] *In re Jennings*, 670 F.3d at 1334 (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)).  The Eleventh Circuit has consistently analyzed willfulness and malice separately—and given them separate definitions—and the Court is bound to follow this approach.

---

[11] That it is relevant to this question does not necessarily mean that it is dispositive of the issue as a matter of law.  The Court discusses this below in connection with its discussion of malice.

We hold, in conclusion, that debts resulting from the intentional tort of false imprisonment are debts for "willful . . . injury" under 11 U.S.C. § 523(a)(6) when the debtor intended to confine his victim.  It is not necessary, for the purpose of willfulness, that the debtor intended this confinement to be unlawful.

### 3.  The "Willfulness" Standard Applied by the Bankruptcy Court

Given the foregoing analysis, the Bankruptcy Court's finding that the injury from Defendant's false imprisonment of Plaintiffs was "willful" must be affirmed.  The Bankruptcy Court observed, for example, that Defendant clearly intended his accusations to cause Plaintiffs to be detained by the police; that Defendant did much to "propel the investigation of Plaintiffs" beyond merely report their conduct; and that his "own statements show he was aware that his accusation would result, at a minimum, in an investigation of Plaintiffs by police." (*See* Doc. 1-2 at 11.)  In other words, Defendant acted with the purpose of having Plaintiffs confined.

However, the Bankruptcy Court's willfulness determination with respect to slander cannot be reconciled, on the present record, with its finding that Defendant genuinely believed Plaintiffs stole his wallet.  To be sure, the Bankruptcy Court correctly stated that "Defendant must have 'intended the consequences of an act, not simply the act itself,'" and that "neither

25

recklessness nor negligence are sufficient to establish willfulness." (Doc. 1-2 at 9) (quoting *Kawaauhau*, 523 U.S. at 61-62, 64) (internal quotation omitted). But, as Defendant points out, the Bankruptcy Court also states that Defendant had a genuine belief in the truth of his accusations without mentioning if this is relevant to whether the slander was "willful."

The Court will reverse the judgment on this point and remand to the Bankruptcy Court. The Court considers that the Bankruptcy Court's factual findings imply the possibility that at some point Defendant could no longer have believed his wallet was stolen by Plaintiffs, or that he might have come to know it was "substantially certain" that his statements were false. The Bankruptcy Court noted, for example, that "Defendant's behavior continued even after Parker had looked in each of the women's purses without finding the missing wallet." (Doc. 1-2 at 10.) Plaintiff Ali testified in the state court trial that both Plaintiffs had no pockets, and the officer who checked the women's bags stated that, when he did not find the wallet in either one, he thought they were "out of the equation" as suspects in any possible theft of the wallet. (Doc. 4-9 at 158; *id.* at 111-112, 124.) It appears from the testimony in the state court trial that Defendant most likely observed the purses being

26

checked.[12]  At the same time, the Bankruptcy Court made a relatively absolute finding that Defendant "genuinely believed Plaintiffs had taken his wallet." (Doc. 1-2 at 11.)  It did so without any clear qualification as to the timing of this belief, although in the context of the malice analysis it seems to be referring to the time when Defendant first made his accusations to the police. (*See id.* at 11-12.)  Given this ambiguity, the Court cannot be sure how to apply the "genuine belief" finding to the question of whether Defendant knew his statements to be false or whether he was substantially certain they were false throughout the entire course of events, or only in the initial stages of the incident.  As the Court has said, the question of whether a preponderance of the evidence shows willfulness is a question of fact.  *See In re Kane*, 755 F.3d at 1293.  It is, for this reason, a question best left to the Bankruptcy Court, particularly where answering it involves weighing the credibility of the parties' testimony.  *See id.* at 1288 (citing *Englander v. Mills (In re Englander)*, 95 F.3d 1028, 1030 (11th Cir.1996)).   The Court will therefore remand to the

---

[12] There is testimony at the state court trial to the effect that the Tanqueray Lounge is a relatively small establishment.  (*See* Doc. 4-9 at 149-150, 157.) Plaintiff Ali also testified at trial that while the purses were checked, Defendant was present, "walking back and forth calling us all kinds of derogatory names."  (Doc. 4-9 at 159.)

Bankruptcy Court for a reexamination of the record in light of the legal standard articulated above.

## C. "Malicious Injury"

A "malicious" injury is one that is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)). "To establish malice, 'a showing of specific intent to harm another is not necessary.'" *Id.* (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

The Bankruptcy Court based its finding of malice on the following reasoning:

> [R]eporting a crime cannot be said to be wrongful, excessive, or without just cause, even if based on a mistaken belief. However, reporting of an alleged crime did not require Defendant to continue claiming that Plaintiffs had stolen his wallet and that they were going to go to jail. After reporting that his wallet was missing and the officers began investigating, Defendant's civic duty was done and his continued accusations using derogatory and profane language became wrongful and without just cause and excessive.

(Doc. 1-2 at 11-12.) Defendant argues that this reasoning manifests the application of an erroneous legal standard on essentially the same grounds on which he contested the finding of willfulness. There can be no finding of malice, he argues, where Defendant was merely doing his "'civic duty' to report

28

a crime." In doing so, he could not have caused an injury that was "wrongful and without just cause." (Doc. 7 at 19.) And that injury could not have been "excessive" because, "so long as Watson was acting under [his] mistaken but genuine belief, his actions did not become 'excessive' merely because he continued to encourage prosecution of Plaintiffs after he first reported believing he was the victim of a crime." (Doc. 7 at 21.) The question put to this Court is thus whether the finding that Defendant "genuinely believed" his accusations precludes, as a matter of law, a finding that the injuries he caused were "malicious."

After a careful consideration of the record, the parties' arguments, the case law, and the reasoning of the Bankruptcy Court, this Court cannot agree that it does. At least in the Eleventh Circuit, the "malicious injury" inquiry—in contrast to that for willfulness—is not so exclusively focused on the debtor's state of mind. The debtor's state of mind is obviously relevant, and often central, to the inquiry. But the Court is not persuaded that, as a matter of law, Defendant's belief absolutely foreclosed any other finding with respect to whether the injuries inflicted were malicious.

The Court believes this reading of "malicious injury" follows from the Eleventh Circuit's articulations and applications of the standard. Its definition does not preclude findings of malice where the debtor's actions might be

determined to be "wrongful and without just cause or excessive" despite the debtor's belief that he was justified or that his actions were not legally wrong. This much is suggested by the fact that the Eleventh Circuit has specified that an action may be "wrongful and without just cause or excessive *even in the absence of personal hatred, spite or ill-will*," and furthermore that "a showing of specific intent to harm another" is not necessary to make a finding of malice." *In re Jennings*, 670 F.3d at 1334 (emphasis added).  It has also explicitly sanctioned findings of "[c]onstructive or implied malice," where "the nature of the act itself implies a sufficient degree of malice," *In re Ikner*, 888 F.3d at 991. This language suggests that the malice inquiry can look as much to the act itself and the surrounding circumstances as to the subjectivity of the debtor.

The Eleventh Circuit's application of the malice standard confirms this interpretation.  *In re Kane*, for example, involved a creditor who held a state court judgment against the debtor arising out of claims for unjust enrichment and quantum meruit.  The parties were lawyers who had previously worked together on complex litigation, which the debtors had secretly settled without notifying the creditor law firm—which, under the terms of the settlement, would receive nothing for its work.  In evaluating the "malice" element, it concluded that the bankruptcy court's determination that each debtor had "acted not merely to pad his own pocket but with ill will toward the [creditors]"

represented a correct application of the standard. *Id.* at 1294. It enumerated several different reasons why "the bankruptcy court was free to imply malice." *Id.* First, the debtors' acts were "wrongful and without just cause" because they knew that the creditors were seeking to settle their part of the litigation for about $12 million, but they attempted to allocate them no money at all as part of their own secret settlement. *Id.* at 1295. Second, one of the debtors— but not both—testified to his discomfort with the provision, and evidence suggested he felt that what he was doing was not right. *Id.* Third, the debtors' acts were "wrongful" and "excessive" because of the "attempt to utterly obliterate any compensation" to the creditor, and because the debtors' "efforts to cover their tracks were excessive too." *Id.*

The circuit court's reasoning here reveals three things about the proper scope of the "malice" inquiry. First, it is not limited to a consideration of the debtor's state of mind with respect to or at the time of the injury. The *Kane* court looked as much (if not more) to what the facts might have implied about whether the injury was without just cause or excessive as to whether the debtor knew his actions to be so. Second, the inquiry is not as narrowly focused on the injury itself, but looks to the broader circumstances in which the injury was carried out, such as the prior relations of the parties and the debtors'

subsequent "efforts to cover their tracks."[13]   Third, the word "excessive"—a feature that distinguishes the Eleventh Circuit's definition of "malicious injury" from that of other circuits—is not, as Defendant argues, without effect. (*See* Doc. 7 at 21.)  On the contrary, the court's language suggests that the fact that a debtor "committed wrongful acts that were 'excessive'" could be an independent ground for a bankruptcy court to "imply malice."  *In re Kane*, 755 F.3d at 1295.

Defendant also makes a more specific argument regarding the legal standard for malice that should govern defamation injuries, citing a handful of cases where courts declined to find a defamation "willful and malicious" when the debtor genuinely believed the truth of his words.  *See Merritt v. Rizzo*, 337 B.R. 180, 189 (Bankr. N.D. Ill. 2006); *Qui v. Zhou (In re Zhou)*, 331 B.R. 274, 277 (Bankr. E.D. Mich. 2005); *Davis v. Davis (In re Davis)*, 334 B.R. 874, 888 (Bankr. W.D. Ky. 2005); *Langan v. Evers (In re Evers)*, 212 B.R. 945, 949 (1997); *In re Pereira*, 44 B.R. 248 (Bankr. D. Mass. 1984).   The Court is

---

[13] It seems to the Court that, for this reason, the inquiry into malice is necessarily less focused on the elements of the specific tort or other injury that is at issue.  The willfulness inquiry, by contrast, requires an examination of a debtor's intent with respect to a specific injury, which necessarily must be defined according to the law that makes such an injury actionable.  It therefore entails the kind of closer analysis of the relevant tort causes of action that the Court has conducted above.

basically in agreement with Defendant that, with respect to defamation torts, the issue of mistaken belief is relevant "in the context of analyzing the issue of intent." (Doc. 7 at 20.)  For this reason, the Court held above that the debtor's knowledge of the truth or falsity of his statement matters, for the purposes of *willfulness*, in considering whether a debt arising from a defamation is nondischargeable under § 523(a)(6).  However, the cases just cited either consider knowledge of falsity in relation to malice or do not distinguish the willfulness and malice inquiries.  They are, in any event, only persuasive authority on this Court, but more importantly they all come from circuits that use definitions of "malicious injury" different from the Eleventh Circuit's.  And for the reasons just discussed, the Eleventh Circuit's malice inquiry lends itself to consideration of what the debtor actually did as well as what he knew or intended.  The willfulness inquiry, by contrast, is more specifically concerned with the debtor's state of mind.  Thus, the Court is not persuaded that any bright-line rule regarding the debtor's knowledge of truth or falsity applies in the context of determining whether defamation injuries are "malicious."

Given this reading of the malice requirement, the Court cannot conclude that Defendant's mistaken belief necessarily precluded a finding of malice as a matter of law.  The Bankruptcy Court was free to consider other factors in deciding whether a preponderance of the evidence showed that the injuries

Defendant caused were "wrongful and without just cause or excessive."   It applied the correct legal standard.   The Court therefore "review[s] only for clear error the bankruptcy court's finding that a creditor showed a willful and malicious injury by a preponderance of the evidence."   *In re Kane*, 755 F.3d at 1293 (citing *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1264 (11th Cir. 1988), *abrogated on other grounds, Grogan v. Garner*, 498 U.S. 279 (1991)).

The Court also cannot find clear error in these factual findings of the Bankruptcy Court.   Even after finding that Defendant genuinely believed in the truth of his accusations, the Bankruptcy Court was free to imply malice. It might have determined that Defendant committed "wrongful acts that were excessive" when he continued to repeat his allegations loudly to those in the bar and parking lot, when he taunted and intimidated Plaintiffs "using profane and derogatory language," and when he put pressure on law enforcement to arrest Plaintiffs even after the police were already investigating, had handcuffed Plaintiff Bradsher, and had checked both women's belongings. Why, the Bankruptcy Court might have wondered, would someone who really believed he had "just cause" for all of his actions also insist on special treatment by threatening to have police and Tanqueray employees reprimanded if they did not cooperate?   The Bankruptcy Court might also have considered the interactions of Defendant and Plaintiff Bradsher prior to the incident and

34

determined that Defendant acted with "ill will" that resulted from more than just his mistaken belief that he was robbed.  The Court does not think it was clear error for the Bankruptcy Court, after weighing the credibility of the parties' testimony and carefully reviewing its own and the state court record, to imply malice despite Defendant's mistaken belief.

Finally, the Court cannot accept the argument that one cannot act "excessively" so long as one is acting under a mistaken belief.  (*See* Doc. 7 at 21.)  If the only actions at issue in this case were Defendant's "reporting a crime," he could not have been found liable for false imprisonment and slander. For both torts, Georgia law draws lines beyond which the attempt to "encourage prosecution" of a crime exposes one to liability.  (*Id.*)  An action for false imprisonment could not have been sustained against Defendant if he had merely reported something to the police, allowing them to make an independent determination of whether to investigate and arrest Plaintiffs.  *See Welton v. Ga. Power Co.*, 375 S.E.2d 108, 111 (Ga. Ct. App. 1988) ("The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute.  In the former case there is potential liability for false imprisonment or malicious prosecution; in the latter

case there is not."). And Georgia law recognizes a conditional privilege defense to defamation under O.C.G.A. § 51-5-7, as long as one "acted in good faith, had an interest to uphold (in this case a public duty), gave a statement properly limited in its scope and upon a proper occasion," and made publication to "proper persons." *See Examination Mgmt. Servs. v. Steed*, 794 S.E.2d 678, 681-82 (Ga. Ct. App. 2016). Defendant was susceptible to liability in the state court—and the Bankruptcy Court was free to find malice—precisely because Defendant did more than just report (what he believed to be) a crime. These points of state law are by no means dispositive of the malice question. But they do dispose of the idea that a belief that one has been robbed can license any sort of response. One can certainly act "excessively" pursuant to genuine—and indeed true—beliefs. More to the point, many of Defendant's actions had little plausible relationship with his civic duty to report a suspected crime. This seems to have been central to the Bankruptcy Court's reasoning.

It is of course true that the Bankruptcy Court would also have been free to weigh the evidence differently and to find that Defendant's mistaken belief weighed against the other factors discussed above. But it did not do so, and the "heavy burden" for showing clear error falls on appellants. *Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir. 1989). It is "an especially heavy burden . . . in a case in which the evidence is largely testimonial," as a

significant portion of the evidence is here. Defendant has not met this burden with respect to the issue of malice, and the Court will therefore affirm the Bankruptcy Court's findings on this point.

## IV.    Conclusion

The Order and Judgment of the Bankruptcy Court (Docs. 1-2, 1-3) are **AFFIRMED IN PART AND REVERSED IN PART.**  The finding of the Order and Judgment that any debt arising from Plaintiffs' false imprisonment claims is nondischargeable is **AFFIRMED**, as is its finding that any debt from Plaintiff's slander claim resulted from a "malicious injury."  However, given the Bankruptcy Court's finding that Defendant "genuinely believed Plaintiffs had taken his wallet," we must **REVERSE** the Order and Judgment with respect to the Bankruptcy Court's finding that the slander injury was "willful." It may yet be determined that the slander injury was indeed willful under § 523(a)(6). But further factual clarification is necessary, as the Court discusses above. *See supra* Part III(B)(3). The case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

**SO ORDERED** this 12th day of August, 2022.

SARAH E. GERAGHTY
United States District Judge